IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHAUNCEY DOTY,

             Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

             Defendant.
_____

Civ. No. 2:12-cv-01727-MC

OPINION AND ORDER

**McSHANE, Judge**:

    Plaintiff Chauncey Doty brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The issue before this Court is whether the ALJ erred in formulating and applying plaintiff's RFC under step four and five of the sequential evaluation. Because the ALJ failed to incorporate recognized mental limitations into plaintiff's RFC and subsequent hypothetical questions posed to the vocational expert (VE), this matter is remanded under sentence four of 42 U.S.C. § 405(g) for further proceedings. Accordingly, the Commissioner's decision is REVERSED and this matter is REMANDED for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

1 – OPINION AND ORDER

Doty applied for DIB and SSI on May 18, 2009, alleging disability since January 1, 2008. Tr. 12, 146, 154. These claims were denied initially on July 28, 2010, and upon reconsideration on January 12, 2011. Tr. 12. Plaintiff timely requested a hearing before an administrative law judge (ALJ), and appeared before the Honorable Richard A. Say on January 17, 2012. Tr. 12, 39–73. ALJ Say denied plaintiff's claims by written decision dated January 27, 2012. Tr. 12–31. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 1–4. Plaintiff now seeks judicial review.

Plaintiff, born on April 18, 1965, earned his GED and worked as a welder for a month in 2010. Tr. 42–45. Plaintiff was forty-two at the time of alleged disability onset, tr. 29 & 42, and forty-six at the time of his hearing, tr. 42.[1] Plaintiff alleges disability due to diabetes mellitus, coronary artery disease status post stent placements, obesity, sleep apnea, depression and other limitations.[2] Tr. 14; Pl.'s Br. 6–7, ECF No. 13.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

---

[1] Plaintiff is a "younger individual" under the Social Security Act. 20 C.F.R. §§ 404.1563(e), 416.963.
[2] Plaintiff cites additional limitations not listed as severe impairments by the ALJ, including: high blood pressure; difficulty sitting, standing, lifting, pushing, pulling, going up and down stairs; regular headaches; urinary incontinence; chronic fatigue; foot problems; chronic low back pain; diminished memory; social irritability; and anxiety. Pl.'s Br. 6–7, ECF No. 13.

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*.

Plaintiff contends that the ALJ erred in formulating and applying plaintiff's RFC under step four and five of the sequential evaluation. In particular, plaintiff argues: (1) the ALJ failed to cite medical authority for RFC limitations imposed; (2) the ALJ improperly evaluated plaintiff's obesity; (3) the ALJ improperly rejected plaintiff's testimony; and (4) the ALJ failed to fully and fairly develop the record.

## I. Medical Authority for RFC Limitations

Plaintiff contends that the ALJ failed to cite adequate medical authority for the RFC limitations imposed and improperly applied SSR 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Br. 11–14, ECF No. 13. Specifically, plaintiff argues that the ALJ improperly determined plaintiff's mental and physical limitations. In response, the government directs this Court's attention to the ALJ's opinion, *see, e.g.*, tr. 20–24, and argues that the ALJ "carefully combed through multiple medical records to formulate a [RFC]." Def.'s Br. 12, ECF No. 22.

Plaintiff's alleged mental limitations include: depression; social functioning deficits; concentration, attention and pace limitations; memory deficits; and "likely" low intellectual functioning. Pl.'s Br. 12–13, ECF No. 13. The ALJ made two sets of mental limitations findings.

3 – OPINION AND ORDER

First, pursuant to step three,[3] the ALJ found that plaintiff had "mild restriction" in activities of daily living, "mild difficulties" in social functioning, and "moderate difficulties" with regard to concentration, persistence and pace. Tr. 16–17. However, the ALJ noted, after explanation, that these limitations did not satisfy the paragraph B criteria pursuant to step three. *Id.*; *see also* 20 CFR § 404.1527(e)(2)(iii) ("[ALJs] *may* also ask for and consider opinions . . . on whether your impairment(s) equals the requirements of any impairment listed[.]" (emphasis added)).

Second, at step four, the ALJ found:

> It was noted that the claimant very much defines himself by his work, but that he now had limited options for work given that his skill was in physical labor. On July 13, 2010, the claimant was alert and oriented times three, with appropriate mood and affect. The claimant had good eye contact and was awake and alert with improved mood on May 18, 2010. The claimant reported slightly anxious mood on exam on December 13, 2010. On January 6, 2012, the claimant was appropriately dressed and groomed with eye contact within normal limits, linear thought processes, blunted range in affect, no psychomotor agitation or retardation, and fair insight and judgment.

Tr. 23 (citations omitted); *see also Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (finding that a physician not specialized in psychiatry may provide a medical opinion concerning a claimant's mental state). These findings, particularly when combined with plaintiff's daily activities, *see, e.g.*, tr. 17 ("[plaintiff] goes to church and his mom's house, and gets along well with authority figures." (citing tr. 192, 200)), provide substantial evidence for the ALJ's mental

---

[3] 20 C.F.R. § 404.1520(a)(4)(iv) provides:

> At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

RFC findings. *See also* tr. 29 (noting that the record "does not contain much evidence regarding the claimant's depression.").

Despite this support in the record, this Court is concerned about how these findings were incorporated into the ultimate RFC and subsequent hypothetical questions posed to the VE. The ALJ determined that plaintiff had the RFC to perform unskilled light work. Tr. 17.[4] Under 20 CFR § 404.1568(a), "unskilled work" is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." Unskilled work, by itself, does not adequately capture plaintiff's "moderate limitation" with regard to concentration, persistence and pace. Had the ALJ limited plaintiff to "simple, routine, repetitive tasks," this would have been a closer decision. *See, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding that an RFC limiting claimant to "simple, routine, repetitive sedentary work" properly incorporated moderate limitations in pace and mild limitations in other mental functioning areas). However, the ALJ, by failing to incorporate recognized mental limitations into plaintiff's RFC and subsequent hypothetical questions posed to the VE, erred in relying upon the VE testimony. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value[.]" (citations and internal quotation marks omitted)).

In addition to these recognized mental limitations, plaintiff directs this Court's attention to a statement made by treating physician Dr. Powers on May 18, 2010. In that report, Dr. Powers wrote "I am concerned that [plaintiff] . . . may have low intellectual functioning, though *I have not done any formal testing*." Tr. 802 (emphasis added). Dr. Powers's concern is supported,

---

[4] The ALJ determined that plaintiff "has the [RFC] to perform light work . . . except that he should never climb ladders, ropes, or scaffolds and he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He is limited to performing unskilled work and he must avoid concentrated exposure to hazards." Tr. 17.

at least in part, by her prior visits with plaintiff.[5]  In response, the government contends that the RFC limitations sufficiently incorporated any "low intellectual functioning" and, in the alternative, the RFC limitations are supported by evidence in the record. Def.'s Br. 15, ECF No. 22 (citing tr. 441, 451, 456).[6]

A designation of "unskilled work," in and of itself, does not sufficiently incorporate plaintiff's alleged "low intellectual functioning." *See, e.g., Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (holding that the ALJ's limiting instruction of "simple, routine, repetitive work" adequately accounted for "the finding of borderline intellectual functioning."). As to the evidence referenced by the government, *see supra* note 6, there is no indication that the ALJ actually relied upon these comments, *see, e.g., Black v. Apfel*, 143 F.3d 383, 385–86 (9th Cir. 1998) (upholding disability denial where the ALJ did not specifically discredit a physician's conclusions, but *did provide* specific references to that physician's medical findings). However, as indicated *supra* § I, the ALJ did rely on other medical evidence that this Court found to be substantial. To the extent that plaintiff argues the ALJ implicitly rejected these statements and that the ALJ should have developed the record, both arguments are addressed below. *See infra* §§ III note 9, IV.

Plaintiff also contests the ALJ's physical RFC findings. *See supra* note 4. Plaintiff claims that the ALJ did not "specify what medical evidence he relied on" or "explain how the evidence" supported the physical limitations imposed. Pl.'s Br. 13, ECF No. 13. In forming his opinion, the ALJ discussed plaintiff's physical limitations at length. Tr. 17–26. This discussion included

---

[5] Dr. Powers met with plaintiff on April 8, 2010, and noted that "[h]e seems to have a hard time grasping the significance of his medical condition and the importance that he be proactively involved in self-managing his diseases." Tr. 807. Likewise, on April 30, 2010, Dr. Powers noted that, despite improvement, "[plaintiff was] still confused about his medications and medical issues." Tr. 804.

[6] On January 9, 2007, and March 18, 2008, Dr. Peet noted "[n]o learning barriers present." Tr. 451, 456. On September 1, 2008, Dr. Leonard noted "[n]o learning barriers present." Tr. 441.

reliance, in part, on the opinions of Dr. Webster, Dr. Jensen, and Dr. Eder.[7] Tr. 24–25; *See also*
40 C.F.R. § 404.1567(b) (defining light work). Likewise, the ALJ drew upon plaintiff's
documented daily activities. *See, e.g.*, tr. 22, 24. Upon consideration of this evidence, the ALJ
imposed limitations more restrictive than those suggested by medical opinion. *Compare supra*
note 4 (RFC determination), *with supra* note 7 (medical findings). Thus, the ALJ's legal findings
regarding plaintiff's physical RFC assessment are supported by substantial evidence on the
record. *See, e.g.*, *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("In disability benefit
cases such as this, physicians may render medical, clinical opinions, or they may render opinions
on the ultimate issue of disability[.]")

## II. Plaintiff's Obesity

Plaintiff contends that the ALJ improperly applied SSR 02-01p, 2002 WL 34686281
(Sept. 12, 2002), in evaluating plaintiff's obesity. Pl.'s Br. 18, ECF No. 13. In response,
defendant directs this Court's attention to the ALJ's treatment of plaintiff's obesity, tr. 16, 22–
23. Def.'s Br. 16–17, ECF No. 22.

SSR 02-01p, a policy interpretation ruling, provides guidance in the evaluation of obesity
in disability claims. In particular, SSR 02-01p directs the ALJ to consider obesity in determining
whether:

> [1] The individual has a medically determinable impairment . . . .
>
> [2] The individual's impairment(s) is severe . . . .

---

[7]    Dr. Webster examined plaintiff on May 14, 2010, and found "[n]o objective evidence for limiting standing and walking. No restrictions and no need for an assistive device." Tr. 800. Dr. Webster also noted that "with [plaintiff's] coronary artery disease" the case could be made that "he has to limit lifting and carrying to 20 pounds occasionally and 10 pounds frequently." *Id*.
     On July 27, 2010, medical consultant Dr. Jensen opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit for about six hours in an eight hour day, and stand and/or walk for six hours in an eight hour day. Tr. 833. On January 7, 2011, medical consultant Dr. Eder confirmed Dr. Jensen's opinion. Tr. 874.

[3] The individual's impairment(s) meet or equals the requirements of a listed impairment in the listings . . . .

[4] The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy . . . .

2002 WL 34686281, at *3.

Because the ALJ found plaintiff's obesity was a "severe" impairment, tr. 16 (citing tr. 654), any error committed by the ALJ could only have prejudiced plaintiff in step three or step five, *see Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

At step three, the ALJ found:

While there is no longer a listing for obesity, the undersigned has considered the effects . . . upon the claimant's ability to perform routine movement and necessary physical activity within the work environment, as well as the combined effects of the claimant's obesity and [his] other impairments, pursuant to [SSR 02-01p]. The medical evidence of record reveals that the claimant has a body mass index of 43. The claimant's obesity was taken into account when developing the [RFC].

Tr. 16 (citations omitted). "As obesity is not a separately listed impairment, a claimant will be deemed to meet the requirements if 'there is an impairment that, in combination with obesity, meets the requirements of a listing.'" *Burch*, 400 F.3d at 682 (citations omitted). However, as stated in SSR 02-01p:

[The ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record.

2002 WL 34686281, at *6. "Although [plaintiff] contends that the ALJ erred in not [properly evaluating] obesity in determining whether [he] meets or equals a listing impairment, [he] does not specify which listing [he] believes [he] meets or equals."

8 – OPINION AND ORDER

*Burch*, 400 F.3d at 682–83. "Further, [he] does not set forth any evidence which would support the diagnosis and findings of a listed impairment." *Id*. at 683 (citing 20 CFR § 404.1525(d)). Because plaintiff carried the initial burden of proving his disability, *see Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989), and did not present evidence in an effort to establish equivalence, *see, e.g.*, *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001), the "ALJ [was] not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination," *Burch*, 400 F.3d at 683. Accordingly, the ALJ did not commit reversible error by failing to elaborate more fully at step three. *See, e.g.*, *Lewis*, 236 F.3d at 514 (finding that an ALJ's failure to adequately consider equivalence was not in err where plaintiff did not offer any "theory, plausible or otherwise, as to how his" impairments combined to equal a listed impairment).

At step four, when determining plaintiff's RFC, the ALJ found:

> In regards to the claimant's obesity, the claimant indicated on October 8, 2008 that he had gained about 22 pounds in the last year, and that his weight generally went up and down, but he believed it was currently up because he was not working. The claimant weigh[]ed 290 pounds, and his body mass index was 43. On December 30, 2008, the claimant reported that he was obese and frustrated with attempts at weight loss. On January 27, 2009, the claimant weighed 300 pounds on exam, and indicated that though he was walking two miles a day and watching what he ate, he had gained weight. On April 6, 2009, the claimant weighed 297 pounds and was noted to be 5'9" tall with a body mass index of 44. On May 6, 2009, the claimant was noted to weigh 291 pounds. The claimant weighed 281 pounds on May 5, 2010, and his weight was noted to be stable. Dr. Webster noted on May 14, 2010 that the claimant moved around easily given his weight and size.

Tr. 22–23. Plaintiff contends that the ALJ's analysis at step five did not "explain how [SSA] reached [its] conclusions on whether obesity caused any physical or mental limitations." SSR 02-01p, 2002 WL 34686281, at *7.

In finding plaintiff's symptoms "disproportionate to the objective and medical findings," the ALJ discussed plaintiff's obesity at length. *See* tr. 22–23. The ALJ subsequently considered plaintiff's obesity, among other impairments, when the ALJ imposed limitations more restrictive than those suggested by medical opinion. Tr. 25; *see also supra* note 7. The ALJ, however, failed to "explain" the link between his RFC determination and plaintiff's "severe" obesity. This error, in and of itself, is harmless because this Court found substantial evidence for the RFC physical limitations imposed. *See supra* § I; *see also Hogle v. Astrue*, 2010 WL 3894621, at *6 (C.D. Cal. Sept. 30, 2010) ("Based on the ALJ's inclusion of limitations beyond those found by the examining physician, the Court finds that the ALJ considered plaintiff's obesity in his RFC determination."). Nevertheless, upon remand, the ALJ is instructed to "explain how [he or she] reache[s] [his or her] conclusions on whether obesity caused any physical or mental limitations." SSR 02-01p, 2002 WL 34686281, at *7.

### III. Credibility Determination

Plaintiff contends that the ALJ improperly rejected plaintiff's symptom testimony, including: testimony related to plaintiff's mental and social limitations, and sleep apnea. Pl.'s Br. 16–18, ECF No. 13. In response, defendant directs this Court's attention to the ALJ's opinion, tr. 20–24, and argues that the ALJ provided "multiple clear and convincing reasons" for his credibility determination. Def.'s Br. 4, ECF No. 22.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR § 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of [his] symptoms." *Smolen*

*v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis[8] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

In making his credibility findings, the ALJ discussed many of plaintiff's mental and physical limitations. Tr. 16–17, 20–24. Of those specifically contested, the ALJ discussed plaintiff's testimony as to depression, tr. 23, 29, anxiety, tr. 16–17, 23, 29, and sleep apnea, tr. 23.

First, as to plaintiff's mental and social limitations, this Court is not persuaded that the ALJ rejected plaintiff's testimony.[9] Rather, the ALJ found that plaintiff's "reduced concentration, . . . reduced attention span, . . . [and] depression causes [plaintiff] to have a moderate limitation in concentration, persistence, and pace that would limit the claimant to the performance of unskilled work." Tr. 29. In support of these findings, the ALJ provided specific, clear and convincing reasons. *See, e.g.*, tr. 23 (citing tr. 615, 802, 815, 851, 1016). For example, on January 6, 2012, Dr. Deyoung found that plaintiff "was appropriately dressed and groomed with eye contact within normal limits, linear though processes, blunted range in affect, no

---

[8] "The Cotton test imposes only two requires on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–08 (9th Cir. 1986)).

[9] The ALJ did not discuss plaintiff's alleged "low intellectual functioning." However, this Court is not persuaded that plaintiff's evidence, *supra* note 5, constitutes "objective medical evidence of an impairment or impairments" under *Cotton*. *See also infra* § IV. Moreover, plaintiff, represented by counsel, did not testify to any alleged "low intellectual functioning." *See* tr. 39–73. Accordingly, the ALJ committed no error.

psychomotor agitation or retardation, and fair insight and judgment." Tr. 23 (citing tr. 1016); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("medical evidence is . . . a relevant factor in determining the severity of the claimant's pain and it disabling effects."). Moreover, the ALJ noted that plaintiff's "daily activities were more extensive" than claimed at the hearing. Tr. 24; *see also Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (finding that a claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" evidenced an ability to work). For example, in August 2008, plaintiff was "very active at work, including fence building, weed whacking, and ranch related work, and noted that he worked long hours doing heavy physical labor." Tr. 24 (citing tr. 683). Likewise, in September 2009, plaintiff's mother reported that he and his wife attended church group bible study weekly. Tr. 192; *see also* tr. 64 ("Sometimes. Sometimes I [have problems working around other people], and sometimes I don't."). However, as indicated *supra* § I, this Court is concerned about how these findings were incorporated into the hypothetical questions posed to the VE.

    Second, as to plaintiff's sleep apnea, plaintiff was diagnosed with moderate obstructive sleep apnea on October 17, 2008. Tr. 643. On October 22, 2008, plaintiff participated in a sleep study and obtained nearly 80% sleep efficiency using a continuous positive airway pressure (CPAP) machine. Tr. 605–11. Although plaintiff noted his dislike for the CPAP machine and difficulties with the mask seal because of his beard, he and his physician "discussed how sleeping should take priority over beards." Tr. 615. On April 6, 2009, plaintiff was seen for his first follow up appointment and indicated that he had been unable to tolerate the CPAP machine. Tr. 572. At that time, Dr. Lesser instructed plaintiff to follow up in one to two months and start on a bi-level of 16/10 (BiPAP machine). *Id*. Plaintiff subsequently met with different physicians on unrelated matters and briefly discussed his sleep apnea. On August 28, 2009, Dr. Zylstra

noted that he "[d]iscussed importance of sleep apnea treatment refer to get the right mask." Tr. 480. On December 13, 2010, plaintiff noted that he continued to use the CPAP machine (and not the BiPAP machine). Tr. 850.

The ALJ may properly discount plaintiff's sleep apnea to the extent that this history reflects "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment[,]" *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), or "[i]mpairments that can be controlled effectively with medication[,]" *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ, in reliance upon plaintiff's failure to follow a prescribed course of treatment, *see* tr. 23, and plaintiff's living circumstances, *see id.* (noting that plaintiff had a three-day old baby at home), provided specific, clear and convincing reasons for rejecting plaintiff's sleep apnea symptoms to the extent they were inconsistent with the RFC. *See also supra* note 4.

## IV. Development of the Record

Plaintiff contends that the ALJ failed to develop the record when he formed plaintiff's mental RFC. Pl.'s Br. 14, ECF No. 13. In response, defendant contends that the evidence did not trigger the ALJ's duty to develop the record.

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)) (quotation marks omitted). "This duty exists even when the claimant is represented by counsel." *Id.* (citing *Brown*, 713 F.2d at 443). "Ambiguous evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotation marks omitted). "The ALJ may discharge this duty in several ways, including:

subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id*. (citations omitted).

As indicated *supra* §§ I–III, this Court is largely satisfied with the ALJ's treatment of the evidence of record. As to plaintiff's alleged "low intellectual functioning," his evidence, *supra* note 5, did not create the ambiguity necessary to trigger the ALJ's duty to develop the record further, *see, e.g.*, *Tonapetyan*, 242 F.3d at 1150 (relying on physician's description of the evidence as "confusing"). "It was [plaintiff's] duty to prove that []he was disabled." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted); *see also* 20 CFR §§ 404.1508, 404.1528(a), 416.908. Plaintiff may not now rely upon mere comments of "concern," particularly when he failed to reference his "low intellectual functioning" at the initial hearing, to obligate the ALJ to develop the record further.

## V. Remand

This Court has "discretion to remand a case either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292 (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Generally, the "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citing *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). However, evidence should be "credited and an immediate award of benefits directed" when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292).

The reversible error identified by this Court—improper reliance on VE testimony—is not of the type that is remedied through a *Harman*-type award of benefits. Even with proper hypothetical questions, the VE may still have opined that plaintiff is capable of performing a significant number of jobs in the national economy. *See, e.g.*, *Stubbs-Danielson*. 539 F.3d at 1174. Accordingly, this matter is remanded under sentence four of 42 U.S.C. § 405(g) for further proceedings. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("'[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Immigration & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002)).

## CONCLUSION

For these reasons, the Commissioner's final decision is REVERSED and this matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings. Upon remand, the ALJ shall (1) incorporate recognized mental limitations into plaintiff's RFC and any relevant hypothetical questions posed to the VE and (2) explain obesity conclusions as directed under SSR 02-01p.

IT IS SO ORDERED.

DATED this 26th day of March, 2014.

_____ s/ Michael J. McShane _____
**Michael J. McShane**
**United States District Judge**

15 – OPINION AND ORDER